836 P.2d 667

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Robert MONTOYA, Defendant–
Appellant.**

**No. 12756.**

Court of Appeals of New Mexico.

June 23, 1992.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Robert Sena, Sena & Couleur, P.C., Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

Defendant appeals his conviction for trafficking cocaine. He raises several issues, including a claim that his trial should have been severed from that of his codefendant. We find the severance claim dispositive and reverse. We also address two issues that are likely to be raised again in a retrial. Due to our proposed disposition of the severance issue, we need not address defendant's other issues.

### SEVERANCE

Law enforcement officers obtained a warrant to search defendant's home. The affidavit in support of the search warrant contained hearsay statements from a confidential informant (CI) stating that (1) defendant would receive a package of cocaine

from Los Angeles on December 1, 1989; (2) within the previous twenty-four hours the CI had seen cocaine (approximately two ounces) at defendant's home; (3) the CI had personally witnessed three drug sales by defendant within the past twenty-four hours; (4) the CI knew defendant sold cocaine from his home; (5) the CI was familiar with the appearance of cocaine; and (6) the CI had purchased cocaine from defendant in the past.

When the officers arrived to serve the warrant, they persuaded defendant to leave the house before informing him of the purpose of their visit. Two officers entered the house and searched for other occupants. In a back bedroom, one officer observed a trunk with a scale on top of it. On top of the scale were a plastic bag with a white, powdery substance and some paper "bindles" used to package cocaine. The officer saw codefendant (Hennessy) sitting on a box facing the scale and holding the weighing tray from the scale in his hand. Defendant and Hennessy were placed under arrest. A further search of the house revealed weapons, more bindles, chemicals used to cut cocaine, and other cocaine paraphernalia. The paraphernalia and a pistol were found in defendant's bedroom, and defendant acknowledged ownership of those items.

Defendant and Hennessy were indicted jointly and scheduled to be tried together. Prior to trial, defendant moved to sever his trial from Hennessy's. The primary basis for his motion was the fact that Hennessy planned to introduce the CI's hearsay statements at trial in an attempt to show that defendant was the dealer and Hennessy was at the house only to purchase cocaine for personal use. At the hearing on the motion for severance, the trial judge denied the motion on grounds of judicial economy. The judge indicated that the CI's statements would not be admitted for the truth of the matters asserted, or as bearing on either defendant's guilt or innocence, but only to show the basis for the officers' investigation of defendant.

At trial, Hennessy did introduce the CI's statements through the testimony of Offi-

cer Frank Rael, the affiant for the search warrant. Defendant objected vigorously and again moved for a severance, which the trial judge again denied. The judge did limit the use of the statements in the manner discussed at the pretrial hearing, and he gave the jury a written instruction to that effect. Defendant and Hennessy were both convicted of trafficking cocaine.

Defendant's severance arguments are primarily based on his assertion that the CI's statements would not have been admissible against him in a separate trial. *See State v. Segotta*, 100 N.M. 18, 665 P.2d 280 (Ct.App.) (severance might be necessary if evidence not admissible in separate trial is admitted during joint trial), *rev'd on other grounds*, 100 N.M. 498, 672 P.2d 1129 (1983). There are two possible bases for the admission of the affidavit statements. One would be to admit the statements, as the trial court did, not for the truth of the matters asserted but for some other purpose. In that case, the hearsay rule would not apply. Another basis would be to admit the statements completely, under some exception to the hearsay rule. *See State v. Beachum*, 83 N.M. 526, 494 P.2d 188 (Ct.App.1972) (trial court will be affirmed if its ruling is correct, even if based on an erroneous rationale). However, the state does not argue that the CI's out-of-court declarations would be admissible against defendant under some exception to the hearsay rule, and we do not see any basis to admit them without violating defendant's confrontation rights. *See White v. Illinois*, —— U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Confrontation Clause would be violated when unavailability is not shown, or when statements are not shown to have sufficient guarantees of reliability—as they do when they fall within firmly rooted hearsay exceptions); *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (doubtful that residual or "catch-all" exception is firmly rooted).

The trial judge admitted the CI's statements in this case not for the truth of the allegation that defendant was a drug dealer, but to show why the officers obtained a warrant to search defendant's house. The jury was specifically instructed not to con-

sider the statements as bearing on either defendant's guilt or innocence. We must decide whether, given that limitation, the statements would have been admissible against defendant in a separate trial.

Defendant cites *State v. Alberts*, 80 N.M. 472, 457 P.2d 991 (Ct.App.1969), for the proposition that such use of the statements was not permissible. In *Alberts*, the trial court allowed a hearsay statement that one law enforcement officer had told another that the defendant was ·" 'alleged to have been dealing in illegal marijuana traffic.' " *Id.* at 473, 457 P.2d at 992. The trial court decided that the statement was offered only to show the reason for the investigation and to establish probable cause. *Id.* This court held that the statement was clearly hearsay and prejudicial, and that its sole effect was to brand the defendant as a suspected violator of marijuana laws. *Id.* at 474, 457 P.2d at 993. We therefore reversed the defendant's conviction.

■ The *Alberts* court seems to have performed a *sub silentio* balancing test and decided that the prejudicial nature of the statement outweighed its limited probative value since it was not admitted for its truth. Similarly, in this case, the statements were expressly not offered for the truth of the matter asserted, which ostensibly takes them out of the hearsay realm. However, the statements in this case are quite prejudicial and, as the trial judge himself noted, it would be difficult for the jury to ignore the content of the statements in reaching its verdict. Again, given the slight need to introduce the statements and their negligible probative value (especially since they were admitted only to show the basis of the search warrant, which was a collateral issue), we hold that the trial court should not have allowed the CI's statements to be admitted, even though they were not admitted for their truth. *See id.*

■ We contrast the statements in this case with similar statements in *State v. Johnson*, 99 N.M. 682, 662 P.2d 1349 (1983), and *State v. Greyeyes*, 105 N.M. 549, 734 P.2d 789 (Ct.App.1987). In both of those cases, out-of-court statements were offered and admitted to show why the police took certain actions. The distinction between those cases and this case is that the statements in the other cases were not as detailed and extensive as the statements in this case. As we emphasized in *Alberts*, there is a distinction between a brief explanation that an officer did something "upon information received" and specific, detailed complaints of particular crimes by the accused. *Alberts*, 80 N.M. at 475, 457 P.2d at 994 (quoting Charles T. McCormick, *McCormick on Evidence* § 227 (1954)). This case, with its lengthy recitation of numerous specific crimes, falls in the latter category. We reiterate what we held in *Alberts*, that the likelihood of misuse of such information by the jury is too dangerous to tolerate.

■ Even when inadmissible evidence is introduced in a joint trial, reversal of a denial of severance is not automatic. *See State v. Ramming*, 106 N.M. 42, 46, 738 P.2d 914, 918 (Ct.App.) (when evidence does not unerringly and devastatingly refer to defendant, and does not form major portion of case against defendant, admission of evidence does not mandate severance, citing *State v. Martinez*, 102 N.M. 94, 691 P.2d 887 (Ct.App.1984)), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). A trial court has discretion in deciding whether or not to sever a case. *Ramming*, 106 N.M. at 47, 738 P.2d at 919. On review of such a decision we must decide whether, due to the joint trial, there is an appreciable risk that the jury convicted for illegitimate reasons. *Id.* This inquiry necessarily involves consideration of the degree of prejudice caused a defendant by the joint trial and of the strength of the legitimate evidence arrayed against that defendant. *Id; cf. United States v. Luciano Pacheco*, 794 F.2d 7 (1st Cir.1986) (when codefendants' accusations against each other are merely cumulative evidence of guilt, severance is not warranted); *United States v. Sheikh*, 654 F.2d 1057 (5th Cir.1981) (when other evidence is strong, there was little actual prejudice in joinder despite existence of antagonistic defenses),

*cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).

Citing *Martinez,* the state contends that reversal is unwarranted in this case because the jury was instructed that it could only consider the informant's evidence "for the limited purpose of establishing a foundation for the Search Warrant," and because the evidence was not devastating to defendant's defense. *See Martinez,* 102 N.M. at 100, 691 P.2d at 893. *Martinez* is distinguishable from this case because here the statements of the confidential informant did unerringly and devastatingly refer to defendant by naming him specifically and implicating him in numerous other uncharged drug transactions, whereas in *Martinez* the evidence complained of made only "nebulous" reference to the defendant. *Id.* at 100, 691 P.2d at 893; *see also Ramming,* 106 N.M. at 45–46, 738 P.2d at 917–18 (no severance required when contested testimony implicated codefendant but did not point unerringly to defendant's guilt or have a devastating impact on his defense).

■ We recognize that the evidence against defendant in this case was not unsubstantial—the cocaine was found in his house, cocaine paraphernalia was found in his bedroom, and several guns were found in the house. Defendant admitted ownership of the paraphernalia and guns. He testified, however, that Hennessy came to his house to borrow his scales and he knew nothing about the cocaine. Given Hennessy's presence in the house and the fact that he was seated in front of the cocaine and was holding a scale tray, it is not implausible for a jury to conclude that Hennessy was the dealer in this transaction. The CI's statements could well have tipped the balance against defendant on that issue. In view of the fact that defendant's defense presented a close question for the jury, we hold that once the trial court decided to admit out-of-court statements pointing unerringly to defendant, it abused its discretion in refusing to sever defendant's trial from Hennessy's. *See State v.*

*Turnbow,* 67 N.M. 241, 354 P.2d 533 (1960) (when severance was only way the court could give effect to the defendants' rights to both testify in their own defense and exclude their spouses' testimony in their own trials, refusal to grant a severance was an abuse of discretion); *State v. Pacheco,* 110 N.M. 599, 798 P.2d 200 (Ct.App. 1990) (prejudice is key factor in determining whether severance should be granted; when the allegedly inadmissible testimony is ambiguous in its implication of defendant, prejudice may not be shown); *cf. State v. Gallegos,* 109 N.M. 55, 781 P.2d 783 (Ct.App.1989) (the defendant demonstrated sufficient prejudice as the result of evidence of multiple crimes that would be inadmissible in separate trials to demonstrate that the trial court's refusal to sever counts was an abuse of discretion).

## OTHER ISSUES

■ Defendant claims that the search warrant did not provide probable cause to search his residence. We disagree. The affidavit indicates that the CI had provided reliable information many times in the past and had personal knowledge, through observation, of defendant's trafficking activities. This information was sufficient to satisfy both the reliability requirement and the "basis of knowledge" requirement for CIs' statements. *See State v. Wisdom,* 110 N.M. 772, 800 P.2d 206 (Ct.App.1990) (affidavit statement that CIs had provided reliable information to law enforcement personnel on at least one prior occasion sufficient to establish credibility; also, statement that CI had personally seen stolen property adequately indicated basis for CI's knowledge).

■ Defendant also complains about a comment made by the prosecutor during the grand jury proceedings. The prosecutor apparently stated, "You mean these drug dealers aren't reputable," and then apologized in an allegedly joking manner. This conduct, while not acceptable behavior, does not come close to the level of

misconduct required to dismiss an indictment. *See State v. Juarez,* 109 N.M. 764, 790 P.2d 1045 (Ct.App.1990) (dismissal of indictment for prosecutorial misconduct is extraordinary remedy to be granted cautiously); *State v. Hewitt,* 108 N.M. 179, 769 P.2d 92 (Ct.App.1988) (perjury, deceit, or malicious overreaching is the type of conduct that will result in dismissal of an indictment).

*CONCLUSION*

Based on the foregoing, we reverse defendant's conviction and remand for a new trial.

IT IS SO ORDERED.

APODACA and BLACK, JJ., concur.